UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 08-10133-GAO

UNITED STATES OF AMERICA

v.

PATRICK GELIN,
Defendant.

OPINION AND ORDER
June 12, 2015

O'TOOLE, D.J.

The defendant, Patrick Gelin, was convicted by a jury of one count of conspiracy to commit health care fraud and seven counts of health care fraud. This Court sentenced him to seventy-two months imprisonment, and the First Circuit affirmed his conviction and sentence. The defendant, acting *pro se*, has moved to vacate his sentence pursuant to 28 U.S.C. § 2255 on the basis that his trial counsel was constitutionally ineffective. He also seeks an evidentiary hearing.

Post-conviction relief pursuant to § 2255 is an extraordinary remedy that is available only where a defendant sufficiently shows that his conviction was fundamentally unfair. See Singleton v. United States, 26 F.3d 233, 236 (1st Cir. 1994). Relief under § 2255 is available where the defendant's sentence was imposed in violation of the Constitution or laws of the United States, was imposed by a court that lacked jurisdiction, exceeded the maximum authorized by law, or is otherwise subject to collateral attack. David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). The defendant bears the burden of showing that he is entitled to relief. Id.

Gelin argues that his attorney rendered constitutionally ineffective assistance in two ways: first, by failing to interview and call certain potential witnesses and, second, by advising the

defendant not to testify in his own defense. To establish ineffective assistance of counsel, the petitioner must demonstrate both that "counsel's representation fell below an objective standard of reasonableness" and "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). A lawyer's representation falls below an objective standard of reasonableness when "counsel's choice was so patently unreasonable that no competent attorney would have made it." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) (internal citation and quotation omitted). Prejudice exists when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 66. There is "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and represents sound trial strategy." Jewett v. Brady, 634 F.3d 67, 75 (1st Cir. 2011) (quoting Strickland, 466 U.S. at 689).

The defendant claims his counsel was ineffective for failing to interview and call as witnesses a list of people he asserts would have testified to his lack of knowledge about the insurance fraud. At trial, the government relied heavily on the testimony of Sharon Little, who was the office manager for the clinic the defendant owned and who implicated him in the fraud conducted there. It was a significant part of the defense strategy to paint Little as the person responsible for the fraud, not Gelin. The defendant faults his attorney for, rather than putting on his suggested witnesses, "instead decid[ing] that it would be more effective to defend Gelin by attacking [Little's] credibility." (Mot. to Vacate at 9 (dkt. no. 254).) Specifically, the defendant claims that the suggested witnesses "were all prepared to testify that Gelin was not aware of the fraud that Little committed at Premium and that Gelin was away in Florida during the time that the fraud occurred." (Id. at 11.)

2

The defendant is incorrect that the exclusion of these potential witnesses was unreasonable and prejudicial. First, the jury heard evidence that the defendant was in Florida for parts of the relevant period; that was not contested by the government. To the extent the witnesses could have testified to that fact, the testimony would have been cumulative and not worth the risks of cross-examination and potential impeachment. Second, the witnesses could not under the Federal Rules of Evidence have testified to what the defendant knew or didn't know or even what he had told them about what he knew or didn't know. At most, then, one of the proposed witnesses might have been allowed to testify that he "observed Gelin's reaction" to Little's involvement in the scheme, a matter not likely to be especially probative in light of all the evidence before the jury. (Gelin Aff. at 4 (dkt. no. 254-1).) Third, another of the proposed witnesses would have likely been subjected to significant impeachment by the prosecution based on the report of an August 2006 FBI interview in which she made incriminating statements about the defendant. Defense counsel had access to this report through pre-trial discovery. (See Gov't's Response at 10 (dkt. no. 261); Form FD-302 (dkt. no. 261-1).)

"The decision whether to call a particular witness is almost always strategic, requiring a balance of the benefits and risks of the anticipated testimony." Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993). Similarly, the choice to interview potential witnesses "must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of the particular case." Id. at 55. Here, where the witnesses' testimony would have been cumulative, inadmissible, and not very probative if admissible, with some vulnerable to highly damaging impeachment, "the decision to bypass them reasonably could be viewed as legitimate trial strategy." Horton v. Allen, 370 F.3d 75, 87 (1st Cir. 2004). See also Estevez v. United States, 601 F. Supp. 2d 348, 353 (D. Mass. 2009) (strategic decisions include those made to avoid presenting

further evidence implicating the defendant); Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (counsel's choice to focus on certain issues to the exclusion of others warrants "a strong presumption that he did so for tactical reasons rather than through sheer neglect"). The defendant cannot show that the outcome would have been different had this testimony been offered.

It should be noted that counsel's cross-examination of Little herself was vigorous and extended, including eliciting from her an admission that she had lied in previous statements about relevant events. That fact undercuts any potential implication that he took an inattentive or lackadaisical approach to defending Gelin.

Before the commencement of trial and again after the government rested, the defendant says he communicated to counsel that "he wanted to explain his side of the story to the jury," which he believed would show that Little was lying about his involvement in the fraud scheme because of her animosity toward him. (Mot. to Vacate at 12.) Before trial, "counsel explained that they should wait to see how the trial goes before making the decision as to whether Gelin should testify." (Id.) After the government rested,

> counsel assured Gelin that he did not need to prove anything because Little had already destroyed her credibility, and if Gelin were to testify, doing so would likely provide the Government with the opportunity to salvage what has been lost through Little's impaired credibility. Gelin, trusting that counsel knew what he was doing, relented in his desire to testify.

(Id. at 13.)

Although the failure to advise a client of his right to testify is "constitutionally deficient," Owens v. United States, 483 F.3d 48, 58 (1st Cir. 2007), the defendant does not allege that deficiency. Instead, he merely complains that he was advised against testifying or, to put it more bluntly, that he was talked out of it by his counsel. "Unaccompanied by coercion, legal advice concerning exercise of the right to testify infringes no right, but simply discharges defense

4

counsel's ethical responsibility to the accused." Lema, 987 F.2d at 52 (internal citations omitted). Here, counsel's advice was professionally reasonable, given Little's two-day cross-examination by the defense and the risk that the defendant's testimony would be highly damaging due to his prior record of untruthfulness, which counsel knew the government planned to use for impeachment. See Trial Tr. Day 9: 14-15. Under these circumstances, counsel's advice to the defendant was hardly constitutionally deficient.

Finally, the defendant is not entitled to an evidentiary hearing because his allegations, taken as true, do not demonstrate a cognizable claim for relief. United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Gelin does not suggest there is a contested issue of fact as to relevant events. Having presided over the trial, this Court is familiar with the evidence tending to prove the defendant's knowledge of the fraud and employs that familiarity in making the above findings. Id; Indelicato v. United States, 106 F. Supp. 2d 151, 154 (D. Mass. 2000) ("a court may dismiss a § 2255 petition in reliance on its own recollection of prior events").

For the foregoing reasons, the defendant's Motion to Vacate under 28 U.S.C. § 2255 (dkt. no. 254) is DENIED. Because the defendant has not "made a substantial showing of the denial of a constitutional right," see 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge